FILED
CLERK, U.S. DISTRICT COURT

9/14/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CD___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:22-cr-00418-SVW |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 982: Criminal Forfeiture] |
| SARA VICTORIA,<br>  aka "Vanessa,"<br>  aka "Sarita,"<br>MARICRUZ MENDOZA SILLAS,<br>  aka "Mary,"<br>  aka "Maricruz Sillas,"<br>RODOLPHO BOJORQUEZ,<br>CESAR DELGADILLO,<br>JOEL LIZARRAGA, and<br>SIMON RAMIREZ,<br><br>           Defendants. | |

The Acting United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.  Defendant SARA VICTORIA, also known as ("aka") "Vanessa," aka "Sarita," was a resident of San Pedro, California.

2. Defendant VICTORIA was the owner of Waterfront Wellness Center, Inc. ("Waterfront Wellness"), located in Wilmington, California. Defendant VICTORIA operated Waterfront Wellness from approximately July 2015 through August 2019.

3. In approximately September 2019, defendant VICTORIA caused to be registered with the state of California a new business, Back to Life Wellness Center, Inc. ("Back to Life Wellness"), with a registered address in San Pedro, California. Defendant VICTORIA operated Back to Life Wellness from approximately September 2019 through May 2020.

4. In approximately May 2020, defendant VICTORIA caused to be registered with the state of California a new business, The Chiroman Wellness Center ("Chiroman Wellness"), with a registered address in Wilmington, California. Defendant VICTORIA operated Chiroman Wellness from approximately May 2020 through April 2021.

5. Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness were clinics operating in the Central District of California. Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness offered its patients chiropractic services, acupuncture treatments, and sexual services.

6. Defendant MARICRUZ MENDOZA SILLAS, aka "Mary," aka "Maricruz Sillas," was a resident of Anaheim, California. Defendant SILLAS worked for defendant VICTORIA at Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness, from approximately 2017 through January 2021.

7. Defendant RODOLPHO BOJORQUEZ was a resident of Carson, California. Defendant BOJORQUEZ was a longshoreman who worked in Long Beach, California, and was a member of the International

Longshore and Warehouse Union, formerly known as the International Longshoremen's and Warehousemen's Union ("ILWU"). Defendant BOJORQUEZ had health insurance through the International Longshore and Warehouse Union – Pacific Maritime Association ("PMA") Benefit Plan ("ILWU-PMA Plan").

8. Defendant CESAR DELGADILLO was a resident of Wilmington, California. Defendant DELGADILLO was a longshoreman who worked in Long Beach, California, and was a member of the ILWU. Defendant DELGADILLO had health insurance through the ILWU-PMA Plan.

9. Defendant JOEL LIZARRAGA was a resident of Palmdale, California. Defendant LIZARRAGA was a longshoreman who worked in Long Beach, California, and was a member of the ILWU. Defendant LIZARRAGA had health insurance through the ILWU-PMA Plan.

10. Defendant SIMON RAMIREZ was a resident of Wilmington, California. Defendant RAMIREZ was a longshoreman who worked in Long Beach, California, and was a member of the ILWU. Defendant RAMIREZ had health insurance through the ILWU-PMA Plan.

11. Co-conspirators L.R., R.M., C.H., and C.R. were longshoremen who worked in Long Beach, California, were members of the ILWU, and had health insurance through the ILWU-PMA Plan.

The ILWU-PMA Plan

12. The ILWU, together with various ILWU locals in different port locations, represented dock workers at ports on the West Coast of the United States, including at the ports of Los Angeles and Long Beach within the Central District of California.

13. The PMA represented member organizations involved in the shipping industry and arranged on their behalf for the hiring of dock workers at ports on the West Coast of the United States, including at

the ports of Los Angeles and Long Beach within the Central District of California.

14. The ILWU-PMA Plan was a benefit plan, established by agreement between the ILWU and PMA and affecting commerce, that provided a variety of benefits, including health care benefits, to eligible active and retired ILWU members and their qualified dependents and survivors. The ILWU-PMA Plan was thus a "health care benefit program" as defined by Title 18, United States Code, Section 24(b). Eligible recipients of health care benefits under the ILWU-PMA Plan had an annual choice to have those benefits provided through either a Health Maintenance Organization or a self-funded program that, effective July 1, 2000, was the ILWU-PMA Plan. The ILWU-PMA Plan was funded almost entirely by the PMA.

15. The ILWU-PMA Plan reimbursed providers of medical services, including physicians, chiropractors, and medical clinics (collectively, "providers"), that treated patients covered by the Plan ("Plan member" or "Plan members"). Each ILWU-PMA Plan member had a unique identification number.

16. The ILWU-PMA Plan required providers to submit claim forms to receive reimbursement for medical services provided to ILWU-PMA Plan members. Among other information, providers were required to include in the claim forms: (i) the ILWU-PMA Plan member's name and identification number; (ii) the type of service provided; (iii) the date the service was provided; (iv) the charge for the service; (v) the diagnosis; and (vi) the provider's name and/or identification number.

17. The ILWU-PMA Plan had a Preferred Provider Organization ("PPO"). For medical services provided by providers within the PPO,

4

the ILWU-PMA Plan generally covered 100% of the PPO charge with no deductible and without requiring Plan members receiving the services to contribute any copay amount or incur any other out-of-pocket costs.

18. The ILWU-PMA Plan provided coverage for chiropractic services and had a PPO for chiropractic services, which, effective as of July 1, 2009, was the Chiropractic Health Plan of California ("CHPC"). For chiropractic services provided by a CHPC provider, the Plan covered 100% of CHPC charges, with no out-of-pocket cost to the Plan member receiving the chiropractic services. Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness were CHPC providers. The chiropractic services covered by the ILWU-PMA Plan included office visits, up to a maximum of 40 office visits related to any particular "diagnosis," and up to a maximum of 18 office visits related to "symptoms" in the absence of a "diagnosis." The ILWU-PMA Plan provided coverage for these services both to eligible active and retired ILWU members and to their spouses and dependent children.

19. The CHPC had a Code of Conduct agreed to by its providers that was developed to address specific areas of concern relating to the ILWU-PMA Plan's chiropractic benefit. Among other things, the Code of Conduct required treatments provided to an ILWU-PMA Plan member to be medically necessary and only to address the specific condition as diagnosed and documented in the ILWU-PMA Plan member's patient's history.

B. THE OBJECT OF THE CONSPIRACY

20. Beginning in or about January 2017 and continuing until at least in or about April 2021, in Los Angeles County, within the

Central District of California, and elsewhere, defendants VICTORIA, SILLAS, BOJORQUEZ, DELGADILLO, LIZARRAGA, and RAMIREZ conspired with one another, and with others known and unknown to the Acting United States Attorney, to commit Health Care Fraud, in violation of Title 18, United States Code, Section 1347.

C. <u>MANNER AND MEANS OF THE CONSPIRACY</u>

21. The object of the conspiracy was carried out, and was to be carried out, in substance, as follows:

    a. Defendant VICTORIA would hire women, including defendant SILLAS, to provide sexual services to ILWU-PMA Plan members at Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness.

    b. Defendants BOJORQUEZ, DELGADILLO, LIZARRAGA, and RAMIREZ, and other co-conspirators, would visit Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness to obtain sexual services from defendants VICTORIA and SILLAS, and other women.

    c. As payment for those sexual services, defendants BOJORQUEZ, DELGADILLO, LIZARRAGA, and RAMIREZ, and other co-conspirators, would authorize Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness to submit claims to the ILWU-PMA Plan for chiropractic and acupuncture services, each knowing that they had not received chiropractic and acupuncture services, and had in fact received sexual services.

    d. Defendants BOJORQUEZ, DELGADILLO, and RAMIREZ, and other co-conspirators, would authorize Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness to submit claims on behalf of their relatives and other beneficiaries, knowing that the beneficiaries had not received covered services that day or even visited Waterfront Wellness, Back to Life Wellness, or Chiroman

Wellness. Defendants VICTORIA, SILLAS, BOJORQUEZ, DELGADILLO, and RAMIREZ, and other co-conspirators would cause Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness to submit claims to the ILWU-PMA Plan for chiropractic and acupuncture services that were in fact not rendered to relatives and other beneficiaries covered under their insurance plan, so defendants BOJORQUEZ, DELGADILLO, and RAMIREZ could continue receiving sexual services even after using all their allotted visits.

    e. Defendant SILLAS would recruit ILWU-PMA Plan members to obtain sexual services from Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness in exchange for allowing Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness to submit false claims to ILWU-PMA Plan for chiropractic and acupuncture services.

    f. Defendant RAMIREZ would authorize his relatives and friends to obtain sexual services from Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness, and authorize Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness to submit claims to the ILWU-PMA Plan for chiropractic and acupuncture services under the false pretense that those chiropractic and acupuncture services were rendered to defendant RAMIREZ.

    g. Once defendants BOJORQUEZ, DELGADILLO, and RAMIREZ, and co-conspirators L.R., R.M., C.H., and C.R., and others either visited Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness, or agreed to have defendants VICTORIA and SILLAS submit claims to the ILWU-PMA Plan for visits that never occurred, defendant VICTORIA would bill, and cause employees of Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness to bill, the ILWU-PMA Plan

for services not rendered. As defendants VICTORIA and SILLAS and the other co-conspirators then knew, the claims included materially false and misleading statements and omissions that the patients had received medically necessary chiropractic and acupuncture services from qualified medical professionals, when, in fact, as defendants VICTORIA and SILLAS and the other co-conspirators then knew, they had not, and on some occasions, had not even visited Waterfront Wellness, Back to Life Wellness, or Chiroman Wellness on that day.

      h.    Defendant VICTORIA would use the national provider identifiers of chiropractors to submit fraudulent claims to the ILWU-PMA Plan on behalf of defendants BOJORQUEZ, DELGADILLO, LIZARRAGA, and RAMIREZ, other co-conspirators, and their relatives, when, as defendant VICTORIA knew, those chiropractors did not actually provide any services to defendants BOJORQUEZ, DELGADILLO, LIZARRAGA, and RAMIREZ, other co-conspirators, and their relatives.

      i.    Defendant VICTORIA would pay ILWU-PMA Plan members, including defendants LIZARRAGA, and RAMIREZ, and other co-conspirators, to allow defendant VICTORIA to bill the ILWU-PMA Plan when ILWU-PMA Plan members did not visit Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness.

22. Between in or about January 2017 and in or about August 2021, through Waterfront Wellness, Back to Life Wellness, and Chiroman Wellness, defendant VICTORIA and other coconspirators submitted and caused to be submitted at least $2,110,920.30 in fraudulent claims to the ILWU-PMA Plan, for which the ILWU-PMA Plan paid at least $551,810.09.

D.  OVERT ACTS

23. On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants VICTORIA, SILLAS, BOJORQUEZ, DELGADILLO, LIZARRAGA, and RAMIREZ, and others known and unknown to the Acting United States Attorney, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

Overt Act No. 1:  On or about June 6, 2019, defendants VICTORIA and DELGADILLO caused to be submitted to the ILWU-PMA Plan a false and fraudulent claim for reimbursement in the amount of $320 for chiropractic, manual therapy, and physical therapy services purportedly provided to S.D. that S.D. did not, in fact, receive.

Overt Act No. 2:  On or about March 12, 2020, using coded language in a text message, defendant VICTORIA obtained authorization from co-conspirator C.R. to submit fraudulent claims to the ILWU-PMA Plan using the name of co-conspirator C.R.'s wife, M.J., who was a beneficiary of co-conspirator C.R.'s health insurance under the ILWU-PMA Plan.

Overt Act No. 3:  On or about March 18, 2020, in a text message, defendant VICTORIA obtained a picture of M.J.'s driver's license from co-conspirator C.R.

Overt Act No. 4:  On or about May 21, 2020, in a text message, defendant DELGADILLO authorized defendant VICTORIA to submit fraudulent claims to the ILWU-PMA Plan under his daughter's name, who was a beneficiary of defendant DELGADILLO's health insurance under the ILWU-PMA Plan.

Overt Act No. 5:  On or about August 14, 2020, defendant VICTORIA caused to be submitted to the ILWU-PMA Plan a false and

fraudulent claim for reimbursement in the amount of $60 for chiropractic, manual therapy, and physical therapy services purportedly provided to co-conspirator L.R. that co-conspirator L.R. did not, in fact, receive, but instead received sexual services.

<u>Overt Act No. 6</u>:   On or about August 17, 2020, defendants VICTORIA and LIZARRAGA caused to be submitted to the ILWU-PMA Plan a false and fraudulent claim for reimbursement in the amount of $405 for chiropractic, manual therapy, and physical therapy services purportedly provided to defendant LIZARRAGA that defendant LIZARRAGA did not, in fact, receive, but instead received sexual services.

<u>Overt Act No. 7</u>:   On or about August 20, 2020, in a text message, co-conspirator C.R. told defendant VICTORIA, "Heard the Columbian is in today haha.  Would I be able to use my wife's?  I know it's last minute."

<u>Overt Act No. 8</u>:   On or about August 26, 2020, defendant VICTORIA caused to be submitted to the ILWU-PMA Plan a false and fraudulent claim for reimbursement in the amount of $395 for chiropractic, manual therapy, and physical therapy services purportedly provided to M.J. that M.J. did not, in fact, receive.

<u>Overt Act No. 9</u>:   On or about August 26, 2020, defendant VICTORIA caused to be submitted to the ILWU-PMA Plan a false and fraudulent claim for reimbursement in the amount of $60 for chiropractic, manual therapy, and physical therapy services purportedly provided to co-conspirator C.H. that co-conspirator C.H. did not, in fact, receive, but instead received sexual services.

<u>Overt Act No. 10</u>:   On or about September 2, 2020, in a text message, defendant VICTORIA told co-conspirator C.R., "Hi new girl."

Co-conspirator C.R. responded, "If I can I'll text you" but "If not want to charge me? And I'll take the $60."

<u>Overt Act No. 11</u>: On or about September 2, 2020, using coded language in a text message, co-conspirator C.R. asked defendant VICTORIA to submit false claims to the ILWU-PMA Plan using M.J.'s information once a week in exchange for a monthly kickback payment to co-conspirator C.R. of $240.

<u>Overt Act No. 12</u>: On or about January 13, 2021, defendants VICTORIA and DELGADILLO caused to be submitted to the ILWU-PMA Plan a false and fraudulent claim for reimbursement in the amount of $305 for chiropractic, manual therapy, and physical therapy services purportedly provided to defendant DELGADILLO's daughter, S.D., that S.D. did not, in fact, receive.

<u>Overt Act No. 13</u>: On or about January 15, 2021, in a text message, co-conspirator L.R. asked defendant VICTORIA, "Who is working today?" Defendant VICTORIA responded, "A new girl." Co-conspirator L.R. asked, "She got booty or big boobs? Or both?" Defendant VICTORIA replied, "both." Defendant VICTORIA and co-conspirator L.R. then agreed that co-conspirator L.R. would come into Chiroman Wellness several days later to obtain sexual services.

<u>Overt Act No. 14</u>: On or about January 25, 2021, in a text message, defendant RAMIREZ provided defendant VICTORIA with the names and birth dates of four of his family members, including A.R., who were beneficiaries of defendant RAMIREZ's health insurance under the ILWU-PMA Plan, so that defendant VICTORIA could submit fraudulent claims to the ILWU-PMA Plan using their names, for cash payments and sexual services for defendant RAMIREZ.

11

Overt Act No. 15:  On or about February 2, 2021, in a text message, defendant SILLAS informed defendant VICTORIA that defendant SILLAS would contact a customer to obtain the customer's consent to fraudulently bill his health insurance.

Overt Act No. 16:  On or about February 9, 2021, in text messages, defendant RAMIREZ told defendant VICTORIA that defendant RAMIREZ was directing his friend, "BooBoo," to Chiroman Wellness to obtain sexual services, and that defendant RAMIREZ authorized defendant VICTORIA to use defendant RAMIREZ's name to submit a fraudulent claim to the ILWU-PMA Plan for false chiropractic services to pay for sexual services for BooBoo.

Overt Act No. 17:  On or about February 15, 2021, defendants VICTORIA and RAMIREZ caused to be submitted to the ILWU-PMA Plan a false and fraudulent claim for reimbursement in the amount of $425 for chiropractic, manual therapy, and physical therapy services allegedly provided to defendant RAMIREZ that defendant RAMIREZ did not, in fact, receive.

Overt Act No. 18:  On or about February 25, 2021, using coded language in a text message, defendant SILLAS informed defendant VICTORIA that defendant SILLAS told a customer that the customer could only obtain sexual services if the customer allowed defendant VICTORIA to bill the customer's health insurance.

Overt Act No. 19:  On or about February 26, 2021, defendant VICTORIA caused to be submitted to the ILWU-PMA Plan a false and fraudulent claim for reimbursement in the amount of $425 for chiropractic, manual therapy, and physical therapy services allegedly provided to M.J. that M.J. did not, in fact, receive.

1    Overt Act No. 20:  On or about March 3, 2021, using coded
2 language in a text message, co-conspirator C.R. inquired about how
3 much money defendant VICTORIA would pay him for allowing defendant
4 VICTORIA to submit fraudulent claims to the ILWU-PMA Plan using the
5 information of co-conspirator C.R. and his wife, M.J.  Defendant
6 VICTORIA responded, "50 for you 50 for your wife."
7    Overt Act No. 21:  On or about March 15, 2021, defendants
8 VICTORIA and BOJORQUEZ caused to be submitted to the ILWU-PMA Plan a
9 false and fraudulent claim for reimbursement in the amount of $425
10 for chiropractic, manual therapy, and physical therapy services
11 allegedly provided to R.B. that R.B. did not, in fact, receive.
12   Overt Act No. 22:  On or about March 17, 2021, defendant
13 VICTORIA caused to be submitted to the ILWU-PMA Plan a false and
14 fraudulent claim for reimbursement in the amount of $70 for
15 chiropractic, manual therapy, and physical therapy services
16 purportedly provided to co-conspirator R.M. that co-conspirator R.M.
17 did not, in fact, receive, but instead received sexual services.
18   Overt Act No. 23:  On or about March 18, 2021, in a text
19 message, defendant VICTORIA asked co-conspirator R.M., "Did you want
20 to see sindee tomorrow" who was "[t]he girl from Chicago," and co-
21 conspirator R.M. responded, "When are we going to fuck?"  Defendant
22 VICTORIA replied, "I'm not working all that much but when Mary gets
23 back it will free up my time."  Co-conspirator R.M. responded, "I'm
24 going to fuck her too."  Co-conspirator R.M. then stated, "[y]ou
25 should give me a free one for being such a good client," and
26 defendant VICTORIA and co-conspirator R.M. agreed that co-conspirator
27 R.M would come to Chiroman Wellness that day so that co-conspirator
28 R.M. could obtain sexual services.

13

Overt Act No. 24: On or about March 19, 2021, in a text message, co-conspirator R.M. informed defendant VICTORIA, "Hey I have to work till 12 so bill me for yesterday. Sorry."

Overt Act No. 25: On or about March 23, 2021, using coded language in a text message, defendant RAMIREZ informed defendant VICTORIA that defendant VICTORIA owed defendant RAMIREZ $560 for approximately eight fraudulent claims submitted by defendant VICTORIA to the ILWU-PMA Plan for services allegedly provided to defendant RAMIREZ.

Overt Act No. 26: On or about March 30, 2021, in text messages, defendant LIZARRAGA sent defendant VICTORIA a picture of several Explanation of Benefits from the ILWU-PMA Plan and stated, "OK. Just so you know, this makes #12. I don't know if you want to pay those ones or keep going until you get to number 20 ?"

Overt Act No. 27: On or about March 30, 2021, in a text message, defendant VICTORIA responded to defendant LIZARRAGA, "After I paid you I only did 2."

COUNT TWO

[18 U.S.C. § 1028A(a)(1)]

[DEFENDANT VICTORIA]

On or about June 6, 2019, in Los Angeles County, within the Central District of California, defendant SARA VICTORIA, also known as ("aka") "Vanessa," aka "Sarita," knowingly possessed and used, without lawful authority, a means of identification that defendant VICTORIA knew belonged to another person, namely, the name of victim L.M., during and in relation to the offense of Conspiracy to Commit Health Care Fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Information.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7), in the event of any defendant's conviction of the offenses set forth in either of Counts One or Two of this Information.

2. Any defendant so convicted shall forfeit to the United States of America the following:

   (a) All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                STEPHANIE S. CHRISTENSEN
Acting United States Attorney

*[signature]*

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

SHAWN J. NELSON
Assistant United States Attorney
Chief, International Narcotics,
  Money Laundering, and
  Racketeering Section

CHRISTOPHER C. KENDALL
Assistant United States Attorney
Deputy Chief, International
  Narcotics, Money Laundering, and
  Racketeering Section

JASON C. PANG
Assistant United States Attorney
International Narcotics, Money
  Laundering, and Racketeering
  Section